Anjali J. Patel, SBN 28138
Christina M. Locher SBN 027472
**Tyler Allen Law Firm, PLLC**
4201 North 24th Street, Suite 200
Phoenix, AZ 85016
602-456-0545 telephone
602-995-3999 fax
anjali@allenlawaz.com
christina@allenlawaz.com
*Attorneys for Plaintiff Robert Campos*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Robert Campos,<br><br>                    Plaintiff,<br><br>v.<br><br>Salt River Project Agricultural Improvement and Power District, a political subdivision of the State of Arizona;<br><br>                    Defendant. | No.<br><br>**COMPLAINT**<br><br>**(1) Discrimination Based Upon Sex/Disparate Treatment (Title VII, 42 U.S.C. § 2000e et al. and ACRA)**<br><br>**(2) Discrimination Based Upon Age (Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq*. and ACRA)**<br><br>**(3) Hostile Work Environment (Title VII, 42 U.S.C. § 2000e et al., ACRA and ADEA)**<br><br>**(4) Retaliation in Violation of Title VII (42 U.S.C. § 2000e et al.))**<br><br>**(5) Retaliation (Age Discrimination in Employment Act)**<br><br>**(Jury Trial Demanded)** |

Plaintiff Robert Campos ("Plaintiff"), by and through undersigned counsel, for his Complaint against Salt River Project Agricultural Improvement and Power District, a

political subdivision of the State of Arizona, ("SRP" or "Defendant") hereby alleges as follows.

**Preliminary Statement**

1.      Plaintiff, Robert Campos, brings this action against Defendant for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA") and the Arizona Civil Rights Act ("ACRA"), A.R.S. §41-1463(B)(1), which prohibits discrimination against an individual "with respect to the individual's compensation, terms, conditions or privileges of employment because of the individual's race, color, religion, sex, age or national origin or on the basis of disability."

2.      Defendant is Plaintiff's former employer. Despite Plaintiff's demonstrated success, Defendant discriminated against Plaintiff on the basis of Plaintiff's age (over 40 at all times relevant to the claims stated herein) and then retaliated against Plaintiff for his complaints of same.  Defendant also humiliated and discriminated against Plaintiff based on his sex, then retaliated against Plaintiff for his complaints, culminating in his wrongful termination.

**Jurisdiction and Venue**

3.      Robert Campos is an individual and a resident of Maricopa County, Arizona.

4.      Robert Campos's birth date is October 2, 1979.

5.      Defendant is a political subdivision of the State of Arizona and is Plaintiff's former employer.

6.      At all times relevant herein, Defendant had more than fifteen (15) employees and was an employer within the meaning of 42 U.S.C. 2000e(b).

7.      This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), *et seq.*, ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et seq.*, and the Arizona Civil Rights Act ("ACRA") and A.R.S. §41-1463(B)(1).

8.      This Court has jurisdiction over this action and venue is in this district pursuant to 28 U.S.C. §1331, §1391, and the claims are substantively based on Title VII and

2

the ADEA. This Court has supplemental jurisdiction over Plaintiff's state law (ACRA) claims pursuant to 28 U.S.C. 1367(a).

9. At all times relevant hereto, Defendant was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of their employment, and under the direct control of Defendant.

10. Defendant is liable for the culpable acts and omissions of its employees and agents.

11. At all times relevant hereto, Defendant is and has been an employer as defined under Title VII, the ACRA and the ADEA and is accordingly subject to the provisions of each said act.

12. At all times relevant hereto, Plaintiff was an employee of the Defendant as defined under Title VII, the ACRA and the ADEA.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

**General Allegations**

14. Plaintiff incorporates by reference the allegations contained in the forgoing paragraphs.

15. Plaintiff began working for Defendant Salt River Project Agricultural Improvement and Power District as a contractor in or around 2005.

16. On or about May 5, 2008, Defendant hired Plaintiff as a full-time Project Specialist.

17. During his employment, Plaintiff served as the single point of contact for Joint Use matters and managed customer relationships with major telecommunications companies.

18. In or around March 2021, Defendant promoted Plaintiff to Analyst Municipal Planning Senior.

19. Before the events giving rise to this action, Plaintiff had not received any disciplinary action, coaching session, or written warning during his career with Defendant.

3

20. From at least fiscal year 2015 through fiscal year 2022, Defendant consistently rated Plaintiff's performance as a "VALUED Contributor," "MEETS EXPECTATIONS," or "EXCEEDS EXPECTATIONS."

21. In fiscal year 2022, shortly before Christopher Ciaccio became Plaintiff's supervisor, Defendant rated Plaintiff as "EXCEEDS EXPECTATIONS" and noted Plaintiff's "stellar" customer-service skills.

22. SRP also recognized Plaintiff with Special Recognition Awards, including awards in or around 2015, 2020, and 2022.

23. In or about 2020, Plaintiff received a $500 SRA for cultivating a relationship with CenturyLink that expedited the expansion of its network—a project initiated by CenturyLink's Arizona Director.

24. In or about 2022, Plaintiff was awarded a $250 SRA by Gibbons Saint Paul, a liaison to SRP's CEO, for a presentation on the pole attachment process that was later shared with Defendant's board members.

25. In or around November 2022, Christopher Ciaccio became Plaintiff's supervisor.

26. Shortly after becoming Plaintiff's supervisor, Mr. Ciaccio told Plaintiff that he intended to "clean up the mess" from the prior manager and "get his employees back in line."

27. Mr. Ciaccio told Plaintiff that Plaintiff was not "accountable" and that people did not know what Plaintiff did.

28. Mr. Ciaccio further stated that he did not mind being the "bad guy" and would be the "asshole" if needed.

29. In or around April 2023, Mr. Ciaccio accused Plaintiff of violating Defendant's attendance policy because Plaintiff met with customers offsite, though offsite customer meetings were part of Plaintiff's job duties.

30. At or around the same time, Mr. Ciaccio permitted other direct reports to work from home despite the same attendance policy.

4

31. On or about May 11, 2023, Plaintiff consulted HR Representative Patty Gomez regarding the attendance-policy allegations.

32. Ms. Gomez confirmed that the policy concerned absenteeism and tardiness, neither of which applied to Plaintiff.

33. At a company golf outing in or around 2023, Mr. Ciaccio presented Plaintiff's 15-year service award by carelessly tossing a manila envelope at him and mockingly stated, "congrats, here is a $150 dollars for 15 years of service."

34. Beginning in or around late 2023 and continuing through Plaintiff's termination, Mr. Ciaccio repeatedly told Plaintiff that he "wasn't man enough" for the position.

35. Plaintiff documented and reported Mr. Ciaccio's comments to Defendant's Human Resources department.

36. In or around 2024, Mr. Ciaccio hired Daria Gloria into his group.

37. Ms. Gloria was younger than Plaintiff and had less job-related experience than Plaintiff did.

38. Mr. Ciaccio openly praised Ms. Gloria and called her a "superstar."

39. On multiple occasions, Mr. Ciaccio told Plaintiff that if Plaintiff "were hit by a bus and couldn't work," Ms. Gloria would take Plaintiff's position.

40. Plaintiff raised concerns regarding Mr. Ciaccio's conduct to Director Donna Bowles, who was in Plaintiff's chain of command.

41. Ms. Bowles told Plaintiff **not** to report his complaints to Human Resources and stated that she would conduct her own investigation.

42. After Plaintiff escalated his concerns to HR, Ms. Bowles's demeanor toward Plaintiff changed.

43. Ms. Bowles began ignoring Plaintiff in the hallways and acting hostile toward him.

44. In or around May 2025, Mr. Ciaccio issued Plaintiff the first negative performance review of Plaintiff's SRP career.

45. In the fiscal year 2025 review, Defendant rated Plaintiff as "IMPROVEMENT NEEDED."

46. On or about May 28, 2025, Mr. Ciaccio, with an HR representative present, placed Plaintiff on a 90-day Performance Improvement Plan.

47. The stated basis for the PIP included an alleged missed deadline for creating a contact list.

48. Plaintiff had previously been told that the contact-list task was "low priority."

49. Plaintiff completed the contact list, but Mr. Ciaccio rejected it based on formatting preferences.

50. The PIP also contained vague and subjective expectations rather than clear, measurable benchmarks.

51. When Plaintiff asked for clarification regarding the PIP's requirements, HR did not provide meaningful clarification.

52. Mr. Ciaccio told Plaintiff that the PIP standards were "up to him" and based on "what he believed."

53. On or about May 31, 2025, Plaintiff reported discriminatory conduct to HR Representative Mo Bazrouk.

54. Plaintiff's May 31, 2025 report included documentation of events involving Mr. Ciaccio.

55. One PIP goal required Plaintiff to schedule recurring monthly meetings with CenturyLink, with the first meeting to occur before the end of June 2025.

56. Defendant's 'Success Factors' system failed to notify Plaintiff that this PIP goal was finalized and actionable until on or about June 19, 2025.

57. As a result, Plaintiff was given only a few business days to schedule a meeting with an external partner before the end of June 2025.

58. On or about June 25, 2025, Plaintiff informed Mr. Ciaccio that CenturyLink personnel could not meet in June because of pre-scheduled vacations.

59. Plaintiff contemporaneously documented the June 25, 2025 conversation in

his meeting notes.

60. On or about June 30, 2025, Mr. Ciaccio emailed Plaintiff stating, "These meetings were supposed to start in June but that has now passed."

61. In a later meeting with HR, Mr. Ciaccio confirmed Plaintiff's June 25 meeting notes except for Plaintiff's statement that CenturyLink was unavailable in June.

62. On or about July 22, 2025, Defendant terminated Plaintiff's employment.

63. Defendant alleged that Plaintiff was terminated due to his failure to meet the CenturyLink meeting deadline.

64. On or about August 12, 2025, less than one month after Plaintiff's termination, Defendant announced Ms. Gloria as the new Analyst Municipal Planning Sr.

65. Plaintiff's replacement was younger and less experienced than Plaintiff.

66. Defendant treated Plaintiff less favorably than younger and/or female employees, including by subjecting Plaintiff to heightened scrutiny, baseless criticism, a subjective PIP, and termination.

67. Defendant subjected Plaintiff to sex-based harassment and hostile work environment, including repeated statements that Plaintiff "wasn't man enough."

68. Defendant terminated Plaintiff after Plaintiff complained about discriminatory and harassing treatment.

69. Defendant's stated reasons for disciplining and terminating Plaintiff were pretextual.

70. Defendant's actions against Plaintiff were in retaliation for his complaints of gender and age discrimination in the workplace were carried out with an evil mind, were willful and egregious and/or were performed with reckless disregard for Plaintiff's rights under Arizona and federal law. Plaintiff is entitled to collect punitive damages against Defendant in an amount to be determined by the trier of fact.

71. As a result of Defendant actions, Plaintiff has suffered, and continues to suffer from reputational damages, emotional distress, physical distress and financial damages including loss of income and benefits.

**Exhaustion of Administrative Remedies**

72.    Plaintiff incorporates by reference the allegations contained in the forgoing paragraphs.

73.    On or about January 31, 2026, Plaintiff filed a charge of discrimination with the United States Equal Opportunity Commission ("EEOC"), charge number 540-2026-02672.  A true copy is attached as **Exhibit A** and incorporated herein by reference pursuant to Federal Rules of Civil Procedure, Rule 10(c).

74.    The EEOC issued a Notice of Right to Sue for Charge No. on or about April 14, 2026. A true copy is attached as **Exhibit B** and incorporated herein by reference pursuant to Federal Rules of Civil Procedure, Rule 10(c).

75.    This action was filed within ninety (90) days of the EEOC's issuance of the notice of right to sue.

**CLAIMS FOR RELIEF**

**Count I: Discrimination on the Basis of Sex- Disparate Treatment**

**(Title VII, 42 U.S.C. §2000e-2 and Arizona Civil Rights Act §41-1463(B))**

76.    Plaintiff incorporates by reference the allegations contained in the forgoing paragraphs.

77.    42 U.S.C. §2000e-2(a)(1) states that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin…"

78.    The Arizona Civil Rights Act ("ACRA") §41-1463(B) similarly makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to the individual's compensation, terms, conditions or privileges of employment because of the individual's race, color, religion, sex, age or national origin or on the basis of disability."

79.    At all times relevant hereto, Plaintiff was qualified for his position(s) with Defendant.

80. Defendant subjected Plaintiff to disparate treatment on the basis of sex by subjecting him to humiliating statements based upon his sex, baseless adverse actions, including a PIP and ultimately, his termination.

81. Defendant's disparate treatment toward Plaintiff was due at least in part to Plaintiff's sex, which is male.

82. Plaintiff was harmed and suffered damages as a result of Defendant acts and omissions and is entitled to damages in an amount to be proven at trial.

83. Defendant engaged willful and intentional violations of Plaintiff's rights under Title VII with malice and/or reckless indifference, and as a result, is liable for punitive damages.

84. Plaintiff is entitled to an award of damages and attorneys' fees in an amount to be determined at trial.

### Count II: Discrimination on the Basis of Age (Violation of ADEA)
### (29 U.S.C. §621 *et seq*. and Arizona Civil Rights Act §41-1463(B))

85. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

86. Under the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq*. ("ADEA") it is unlawful for an employer to discriminate against an employee on the basis of age.

87. The Arizona Civil Rights Act ("ACRA") §41-1463(B) similarly makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to the individual's compensation, terms, conditions or privileges of employment because of the individual's race, color, religion, sex, age or national origin or on the basis of disability."

88. At all times relevant hereto, Plaintiff was qualified for his position(s) with Defendant.

89. At all times relevant hereto, Plaintiff was over the age of 40.

90. Defendant subjected Plaintiff to disparate treatment on the basis of age by

9

subjecting him to humiliating statements in public, baseless adverse actions, including a PIP and ultimately, his termination.

91.     Plaintiff complained to Defendant on numerous occasions as described above regarding discriminatory practices on the basis of Plaintiff's age.

92.     Defendant failed to take appropriate remedial measures to stop the discrimination.

93.     As a direct and proximate result of Defendant's actions, Plaintiff has sustained damages, including reputational damage, loss of future earning power, plus back pay, and front pay and interest due thereon.

94.     As a further direct result and proximate result of the aforesaid unlawful discriminatory employment practices engaged in by Defendant in violation of the ADEA, Plaintiff suffered severe emotional distress, physical suffering and damages, humiliation, and loss of self-esteem.

95.     As a further direct and proximate result of Defendant's wrongful and willful conduct, Plaintiff is entitled to liquidated damages.

**Count III: Hostile Work Environment**

**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1); ADEA, 29 U.S.C. § 623(a)(1); ACRA, A.R.S. § 41-1463(B)**

96.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

97.     Throughout Plaintiff's employment, Plaintiff was subjected to a work environment permeated with discriminatory conduct based on Plaintiff's sex and age.

98.     Plaintiff's supervisors regularly made derogatory and demeaning comments directed at Plaintiff because of Plaintiff's sex and age, including remarks that were offensive, humiliating, and reflective of discriminatory animus toward men and towards and older workers.

99.     This discriminatory conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create a hostile and abusive working environment

10

that a reasonable person in Plaintiff's position would find hostile or abusive.

100.    Plaintiff perceived the work environment to be hostile and abusive.

101.    The hostile work environment was created and perpetuated by Plaintiff's supervisors, for whose conduct Defendant is liable.

102.    Defendant knew or should have known of the hostile work environment and failed to take prompt and effective remedial action.

103.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages including lost wages and benefits, emotional distress, humiliation, and other compensatory damages in an amount to be proven at trial.

### Count IV: Retaliation in Violation of Title VII

### (42 U.S.C. §§ 2000e et al.))

104.    Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

105.    Plaintiff engaged in protected activity by complaining to Defendant about the discriminatory treatment.

106.    Following Plaintiff's complaints, Defendant engaged in retaliatory practices against Plaintiff, by ignoring him, treating with heightened hostility, subjecting him to a baseless PIP and termination.

107.    A causal link exists between Plaintiff's protected activity and Defendant's adverse actions against Plaintiff.

108.    Defendant's conduct is a violation of the prohibition against retaliation as set forth in Title VII, 42 U.S.C. §2000e- 3(a).

109.    Defendant's actions were willful and egregious and/or were performed with reckless indifference to Plaintiff's federally protected rights, in retaliation for Plaintiff's protected activity.

110.    As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by Defendant in violation of Title VII, Plaintiff sustained permanent and irreparable harm, including reputational damage, loss of future earning power, plus back

11

pay, and front pay and interest due thereon.

111. As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by Defendant in violation of Title VII, Plaintiff suffered severe emotional distress, physical suffering and damages, humiliation, and loss of self-esteem.

112. Plaintiff is entitled to an award of punitive damages and attorneys' fees in an amount to be determined at trial.

## Count V: Retaliation in Violation of ADEA

### (29 U.S.C. §621 *et seq.*)

113. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

114. Plaintiff engaged in protected activity by complaining on numerous occasions as described above regarding discriminatory practices on the basis of Plaintiff's age.

115. Following Plaintiff's complaints, Defendant engaged in retaliatory practices against Plaintiff, by ignoring him, treating with heightened hostility, subjecting him to a baseless PIP and termination.

116. A causal link exists between Plaintiff's protected activity and Defendant's adverse actions against Plaintiff.

117. Defendant's conduct is a violation of the prohibition against retaliation as set forth in the ADEA, (29 U.S.C. §621 *et seq.*).

118. Defendant's actions were willful and egregious and/or were performed with reckless indifference to Plaintiff's federally protected rights, in retaliation for Plaintiff's protected activity.

119. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by Defendant in violation of the ADEA, Plaintiff sustained permanent and irreparable harm, including reputational damage, loss of future earning power, plus back pay, and front pay and interest due thereon.

120.   As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by Defendant in violation of the ADEA, Plaintiff suffered severe emotional distress, physical suffering and damages, humiliation, and loss of self-esteem.

108. Plaintiff is entitled to an award of liquidated damages and attorneys' fees in an amount to be determined at trial.

## Demand for Trial by Jury

Plaintiff hereby demands a trial by jury on all claims so triable pursuant to the U.S. Constitution Seventh Amendment, FRCP Rule 38, and 42 U.S.C. 1981a(c)(1).

## Prayer for Relief

Plaintiff requests the following relief against all Defendants in connection with his Complaint:

A.  Judgment in favor of Plaintiff and against Defendant on all claims;

B.  Statutory, compensatory, consequential damages;

C.  Back pay, front pay and lost benefits pursuant to 42 U.S.C. §2000e-5(g)(1);

D.  Injunctive relief in the form of reinstatement;

E.  Punitive damages pursuant to 42 U.S.C. §1981a(a)(1);

F.  Accrued and accruing pre- and post-judgment interest at the statutory rates;

G.  Liquidated damages under the ADEA, 29 U.S.C.A. §216;

H.  Attorneys' fees and costs pursuant to 42 U.S.C. §2000e-5(g)(1) and A.R.S. §12-341.01; and

I.  Such other relief as the Court deems proper.

**RESPECTFULLY SUBMITTED** this 22nd day of June 2026.

**TYLER ALLEN LAW FIRM, PLLC**

By: */s/Christina M. Locher*
        Christina M. Locher
        *Attorney for Plaintiff Robert Campos*

13

## Attached Exhibits

**A. EEOC Charge No. 540-2026-02672**

**B. Notice of Right to Sue**