# EXHIBIT A

EEOC No. 540-2026-02672 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 540-2026-02672 |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Robert M. Campos

Phone No.:       480-529-6814
Year of Birth:    1979
Mailing Address: 3901 E. Cassia Lane
Gilbert, AZ 85298

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: Salt River Project
No. Employees, Members: 501+ Employees
Phone No.: 602-236-8888
Mailing Address: 998 W. Washington Street
Tempe, AZ 85281, UNITED STATES OF AMERICA
Name:
No. Employees, Members:
Phone No.:
Mailing Address:

DISCRIMINATION BASED ON:

Age, Retaliation, Sex

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 11/01/2022
Latest: 07/22/2025

THE PARTICULARS ARE:

The facts show that after Mr. Campos's new supervisor, C.C., was hired in November 2022, Mr. Campos's previously distinguished career at Salt River Project ("SRP") was systematically dismantled. Despite nearly two decades of exemplary service and an unblemished record, Mr. Campos was suddenly subjected to baseless criticism, gender-based harassment, and a hostile work environment. When he attempted to report this conduct, he was discouraged from involving Human Resources ("HR") by senior management and later retaliated against. This course of conduct culminated in a pretextual Performance Improvement Plan ("PIP"), followed by Mr. Campos's termination and replacement by a significantly younger, less experienced individual with whom Mr. C.C. had a personal connection.

Mr. Campos began working with SRP in 2005 as a contractor and was hired as a full-time Project Specialist on May 5, 2008. For approximately seventeen years, he was a highly valued employee known for his reliability, expertise, and professionalism. He served as the single point of contact for all Joint Use matters, managed customer relationships with major telecommunications companies, and consistently received praise from colleagues and external partners. His performance earned him a promotion to Analyst Municipal Planning Sr. in March 2021, supported by numerous customer recommendation letters. Until the events leading to his termination, Mr. Campos never received any disciplinary action, coaching, or written warning.

EEOC No. 540-2026-02672 | FEPA No.

SRP's own records confirm Mr. Campos's strong performance. For years, he received ratings of "VALUED Contributor," "MEETS EXPECTATIONS," or "EXCEEDS EXPECTATIONS." He was also repeatedly recognized with Special Recognition Awards ("SRAs") for exceptional work, including an award in 2015 for his work on a Joint Use Master Agreement, a $500 SRA in 2020 for strengthening SRP's relationship with CenturyLink, and a $250 SRA in 2022 for a presentation later shared with SRP's board.

This long history of success ended shortly after Mr. Campos's manager of seven years retired. In November 2022, C.C. became Mr. Campos's supervisor. Almost immediately, C.C. adopted an aggressive and hostile management style, declaring his intent to "clean up the mess" left by the prior manager and to "get employees back in line." He told Mr. Campos that he was not accountable, that others did not know what he did, and that he would be the "bad guy" if necessary. This interaction set the tone for what followed.

C.C. soon began singling out Mr. Campos. In April 2023, he accused Mr. Campos of violating SRP's attendance policy for meeting customers offsitedespite this being a core job functionwhile allowing other employees to work remotely in violation of the same policy. When Mr. Campos consulted HR representative P.G. on May 11, 2023, she confirmed the policy concerned absenteeism and tardiness and did not apply to him. Around the same time, C.C. publicly humiliated Mr. Campos at a company golf outing by tossing his 15-year service award envelope at him. C.C. also made intrusive and demeaning comments, including questioning how Mr. Campos could "afford to live in that neighborhood."

From late 2023 through his termination, C.C. repeatedly made gender-based remarks to Mr. Campos during purported "constructive criticism," telling him he "wasn't man enough." These comments, documented by Mr. Campos and reported to HR, constitute overt gender-based harassment and created a hostile work environment in violation of Title VII.

The harassment was part of a broader plan to remove Mr. Campos and replace him. In 2024, C.C. hired D.G., the girlfriend of his close friend, into the group. C.C. openly favored her, referred to her as a "superstar," and repeatedly told Mr. Campos that if he "were hit by a bus," she would take his job. This statement, overheard by others, demonstrated a premeditated intent to replace Mr. Campos. Following Mr. Campos's termination, D.G.a significantly younger and less experienced employeewas promoted into his role on August 12, 2025, less than one month later.

When Mr. Campos attempted to report the harassment, he was retaliated against. He raised his concerns with Director D.B., who told him not to involve HR and claimed she would handle the matter herself. After Mr. Campos nevertheless escalated his concerns to HR, D.B.'s demeanor toward him changed markedly, and she began treating him with hostility and avoidance. This conduct constitutes retaliation for engaging in protected activity.

The campaign culminated in a pretextual PIP and termination. In May 2025, C.C. issued Mr. Campos his first negative performance review in seventeen years, rating him "IMPROVEMENT NEEDED" based on vague and subjective criticisms wholly inconsistent with his documented history. On May 28, 2025, C.C., with HR present, placed Mr. Campos on a 90-day PIP, citing a single missed deadline for a task previously labeled "low priority" and later rejected based on formatting preferences.

The PIP was designed to ensure failure. One requirement was to schedule recurring monthly meetings with CenturyLink, with the first meeting required by the end of June 2025. SRP's system did not notify Mr. Campos that this goal was finalized until June 19, leaving insufficient time to schedule an external meeting during a holiday period. Mr. Campos informed C.C. on June 25, 2025, that CenturyLink personnel were unavailable due to vacations, which he contemporaneously documented. Despite this, C.C. falsely claimed the deadline had simply "passed" and later denied being informed of CenturyLink's unavailability.

Mr. Campos reported the discriminatory nature of the PIP to HR on May 31, 2025, attaching detailed documentation. Less than two months later, on July 22, 2025, SRP terminated Mr. Campos during a brief Teams meeting, citing failure to meet the impossible CenturyLink deadline. The close temporal proximity between Mr. Campos's protected activity and his termination establishes a clear pattern of retaliation, concluding C.C.'s discriminatory scheme through a sham PIP.

Salt River Project is liable ("SRP" or "the Company") for violations of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII")  the Arizona Civil RIghts Act prohibiting age and gender discrimination, workplace harassment, and retaliation

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Robert M. Campos
01/31/2026
_____
Charging Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

_____
Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary_____

Printed Name _____

## CP ENCLOSURE WITH EEOC FORM 5 (06/24)

### PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.